ELLIOTT *v.* G. M. & N. R. Co.*

(Division A.    Jan. 24, 1927.)

[111 So. 146.    No. 26042.]

1. MASTER AND SERVANT. *Proof held not to present question for jury whether engine foreman's death was caused by tripping on defective cross-tie.*

Circumstantial evidence, in action against railroad for death of engine foreman found at side of track, *held* not to make question

for jury whether accident was caused by deceased catching his toe under end of defective cross-tie in alighting from side of box car.

2. TRIAL. *Direction of verdict is proper, when evidence would not support different finding.*

It is duty of a trial judge to direct verdict when testimony and reasonable inference therefrom would not support different finding.

*Corpus Juris-Cyc. References: Master and Servant, 39CJ, p. 1114, n. 52; Trial, 38Cyc, p. 1580, n. 53.

APPEAL from circuit court of Jones county.

HON. R. S. HALL, Judge.

Action by Nellie R. Elliott, administratrix, against the G. M. & N. Railroad Company. From a judgment on a verdict directed for defendant, plaintiff appeals. Affirmed.

*Currie & Currie, Z. A. Brantley* and *J. W. Cassidy,* for appellant.

I.   The court erred in granting a peremptory instruction.  How can a reasonable mind, a fair mind, escape the firm conviction, from the evidence, that this dead man's foot was caught under the end of that rotten crosstie, and that he was thereby thrown under the train where he was injured and killed?  It was a dark, cold, rainy night. Rain will efface or dim old tracks on the ground in such manner that a new or fresh track may be discerned at once.  It was a fresh track made on the wet ground, in the rain, under the end of this crosstie.  Elliott's dead body was found right at, or very near, this track, under the end of his crosstie.

The very facts and circumstances surrounding this shoe track under the end of this crosstie, the position of the dead man's body on the ground, the direction in which the train was moving, the manner in which the end of this rotten crosstie had been disturbed, all show, beyond a

doubt, that the shoe track underneath the end of this crosstie was that of the deceased.

The railroad company did not put on a single witness. It made no effort to explain away these facts. It did not otherwise account for the death of the deceased. Surely, it would not be necessary to cite authority in this case to the effect that the railroad company was guilty of negligence in maintaining an interstate railroad track with such a rotten, defective, and dangerous crosstie in it, as that described in the evidence in this case.

The railroad contended, and we presume that the lower court granted a peremptory instruction upon that theory, that the deceased assumed the risk of being injured and killed in the manner in which he was injured and killed by this rotten, defective, and dangerous crosstie. Was not the assumption of the risk, under the facts and circumstances of this case, a question for the determination of the jury? Unless the court was authorized to hold as a matter of law that the deceased assumed the risk, the peremptory instruction was improperly granted, and the case ought to be reversed.

It cannot be maintained that the deceased assumed the risk, as a matter of law. *Chicago & Northwestern R. R. Co.* v. *Swett*, 45 Ill. 197, 92 Am. Dec. 206; *Buzzell* v. *Laconia Mfg. Co.*, 48 Me. 113; *St. Louis, etc., R. R. Co.* v. *Irwin*, 37 Kan. 701, 1 A. S. R. 266.

The true principle of law applicable to this case is announced in *Chicago & Northwestern R. R. Co.* v. *Swett*, 45 Ill. 197, 92 Am. Dec. 211. The peril to Elliott, the deceased, consisted in the rotten, defective, and dangerous condition of the crosstie, the peril from which he lost his life; it was a risk or peril created by the negligence of his master, the railroad company; a risk or peril which he did not, under any law, assume. *St. Louis, etc., R. R. Co.* v. *Touhey*, 67 Ark. 209, 77 A. S. R. 109. The principle of law announced in *Finkbine Lbr. Co.* v. *Cunningham*, 57 So. 916, also applies here. See, too, *Chicago, etc., R. R. Co.* v. *Kneirim*, 152 Ill. 458, 43 A.

S. R. 259; *Union Pac. R. R. Co.* v. *Nora O'Brien,* 40 L. Ed. 766; Roberts on Injuries, Interstate Employees, Federal Employers' Liability, pages 195-6.

II. Whether or not appellant assumed the risk was a question for the jury, and not for the court. *Baltimore & Ohio R. R. Co.* v. *Taylor,* 186 Fed. 828; *Sioux City & Pac. R. R. Co., plaintiffs in error,* v. *Harry G. Stout,* 21 L. Ed. 745.

III. The assumption of risk is an affirmative defense, and the burden was upon the appellee to prove that Elliott, the deceased, assumed the risk. *Union Pac. R. R. Co.* v. *Nora O'Brien,* 40 L. Ed. 766.

The railroad company, the appellee, was not entitled to a peremptory instruction, under the evidence in this case, on the ground that there was no proof of any negligence against it. The fact was established beyond dispute and beyond doubt that its track was defective and dangerous; that the crossties in it were rotten; and that the deceased lost his life because of the rotten, defective and dangerous condition of the crosstie in it.

*Welch & Cooper* and *Roy P. Noble,* for appellee.

Deceased was found dead with his shoulder cut and his neck broken. The wheels disclosed blood signs. A rotten crosstie was found in the track. An unidentified toe print was found in a place much frequented. When it was made and by whom does not appear. According to one witness, there was the sign of a rolling body. But there were no knee prints or anything indicating a stumbling or falling body. According to another witness, there were signs north of the crosstie. According to one witness, the lantern of deceased, with its light out, was in the middle of the track opposite the crosstie in question. According to another, the lantern was fifteen feet from the tie. But according to this last witness, the

hat of deceased was in the middle of the track from twelve to fifteen feet north of the crosstie.

If deceased had tripped over the rotten tie and stumbled, he would have fallen to the south and the lantern would have been his length, or less, south of the tie. But no effort of the finite mind can reconcile a tripping and stumbling with the undisputed position of the lantern.

Many considerations led the court below to hold that the negligence charged had not been proved. We submit that the court was correct. Let us test this case by the applicable law. Counsel for appellant asks why the proved facts do not call for an explanation. By agreement this cause presents a case determinable by the principles of the federal Employer's Liability Act. Under that act the *prima-facie* statute of Mississippi does not apply. *R. R. Co.* v. *Harris,* 247 U. S. 367, 62 L. Ed. 1167; and *R. R. Co.* v. *Scarlet,* 249 U. S. 528, 63 L. Ed. 752.

Proof of negligence is essential to recovery. This is fundamental. And furthermore, it is so fundamental that citation of authority is unnecessary that the negligence charged must have brought about the injury. *Chicago, etc., R. R. Co.* v. *Coogan, Admx.,* 46 S. Ct. 564. This case is much stronger in its circumstances than the one at bar. As the court said there, "The record leaves the case in the realm of speculation and conjecture. That is not enough."

Appellant devotes considerable argument to the assumption of risk pleaded. The court below did not consider this. It does not appear that there was any impairment in the safety of operation. The rotten tie, if it caused the injury, was no more dangerous than the sound ties which protruded from the ground. *Nelson* v. *So. R. R. Co.,* 246 U. S. 253, 62 L. Ed. 699.

Argued orally by *N. T. Currie,* for appellant, and *Ellis B. Cooper,* for appellee.

McGOWEN, J., delivered the opinion of the court.

The declaration in this case set up as a basis for the action on the part of Mrs. Nellie R. Elliott, as administrator of the estate of her husband, Wright R. Elliott, deceased, against the G. M. & N. R. R. Co., that the decedent Wright A. Elliott, came to his death while in the performance of his duties as engine foreman; that by the gross negligence of the defendant complainant's intestate was killed, because defendant negligently allowed a crosstie in its track to become rotten and defective and dangerous in a place in its yard where the deceased was required to work on said night; that the end of the crosstie was caused to project upward, leaving such a broad space between the ground and the crosstie that the plaintiff's intestate, in disembarking from a box car in the performance of his duties in the nighttime, placed his foot in said space, stumbled, fell and lost his life.

On the proof the court below granted the railroad company a peremptory instruction. The plaintiff relied wholly upon circumstantial evidence as to the details of the accident. Elliott lost his life on a dark rainy night in December, when no one was present, so far as this record discloses, and when no one had seen plaintiff's intestate within two hundred yards of the place at which he was found dead. Mr. Elliott's neck was broken. His body was found alongside the house track, in the city of Laurel, lying parallel with the rails of the railroad, sometime after one o'clock, and before two o'clock, a. m. The wheels of the train had evidently run over his shoulder and arm. There were bruises on his side. Cinders had been "drug in his face." According to the proof in the case and the statement of counsel, he was a healthy man, and a faithful employee of the railroad company.

Mr. W. B. Poltry, an employee of the railroad company, upon being informed by Mr. Richardson that Mr. Elliott had been killed, went to the place where the accident had occurred, and found Elliott's body lying part-

ly on the inside of the track, his feet being on the outside. of the track, on the east side thereof. The tracks in that vicinity ran about north and south. The head and shoulder of Elliott were on the inside of the rail; his feet and body off the other way. Poltry took a flashlight and looked around. He found a rotten crosstie, a piece of which was sticking up from the rail right at the end of the crosstie. He also found a man's toe track at the end of the crosstie. This toe track was under the piece of the cross-tie that was sticking up. The under part of the tie had decayed, and left the top, which was sound. The first sign he saw of any accident was at the crosstie. The body of the dead man was found ten or twelve feet south. The only part of the shoe print visible under this rotten crosstie was the toe print. Beside the tie sticking up and the toe print thereunder were signs where the body had rolled, and Mr. Poltry said that Richardson and Wilder were the first to reach the place; that some time during the night some body removed the rotten crosstie. Mr. Elliott's lantern was seen by this witness, and his hat likewise, in between the rails of the track, ten or twelve feet north of his body, about opposite the end of the tie, in the middle of the track. He saw blood on the wheels of the cars; a cut of cars having been switched or shoved into this house track.

Mitterwright was the engineer in control of the engine and a part of the crew working with Elliott on the night Elliott was killed. In his direct examination offered as a witness for the plaintiff, he said that Mr. Elliott was on the cut of cars he was shoving in on the house track; that Elliott was on the north end of said cut of cars; that the engine was headed north, the cut of cars to the south of the engine; that there were ten or twelve of these cars being shoved back; that witness was governed by signals given with a lantern; that Elliott had a lantern the last time he saw him; that, in looking back, witness saw two lanterns; that one lantern disappeared; that witness took it that the lantern that disappeared was that of Mr. El-

liott; and that Mr. Elliott climbed upon the cars in the discharge of his duties in placing the cars on the house track; that Mr. Elliott's body was found about two hundred yards from where he last saw him with his lantern. On cross-examination, Mitterwright said that he did not know who it was that climbed on the cars with the light which disappeared; that he went to the scene of the accident when he heard that Mr. Elliott had been killed; that the hat and lantern of the deceased were near the end of the car, inside the track; that the last car on the south end of the cut of cars was a gondola, loaded with lumber; and that the second car next to the last was a box car, and, relative to the position of Elliott's body, the south truck of the second car (the box car) was closest to the body. He said they found the lantern and hat about thirty feet from the body; that he saw a crosstie, which was a shell (the top of it was loose), shoved a little to the side, slightly moved to the south, and that the hat and lantern were about twelve or fifteen feet north of the crosstie; and that the body was south of it ten or twelve feet; that Elliott's head was against the rail, and his feet sticking out from the rail, east of the track; that the stirrup on which the men stand to embark or disembark from a gondola or box car extends beyond the rail about two feet; that the crossties extend beyond the rails about eighteen inches. The engineer further said that he saw signs of dragging there, and that the tie indicated that there was dragging north of the crosstie; and that something had dragged over it and shoved it south. The dragging appeared to have continued for about eighteen feet, beginning five or six feet north of the crosstie. He did not see the footprint testified to by Poltry.

It was agreed that Elliott and the G. M. & N. R. R. Co. were both engaged in interstate commerce at the time Elliott was killed, and that this case was subject to be tried under the terms of the federal Employers' Liability Act.

It will be observed that no witness saw the deceased closer than two hundred yards of where his dead body was found; that no witness testified that he ever embarked on the side of the box car or the gondola, as the cut of cars was being shoved into the house track. The first witness who found the body of the deceased did not testify. It is not shown how many other people had visited the scene besides Wilder and Richardson; but it is shown that they found the body and reported to the night watchman, and that the night watchman found the print of a human's shoe, the toe part of which was underneath this crosstie. There is not a scintilla of evidence in this case to show, or by which to presume, fairly, that the toe track was made by the deceased. There is nothing in this record to indicate that the theory of the plaintiff as to how Elliott came to his death is any more reasonable than any number of theories that might be advanced as to his untimely death. Only such presumptions may be indulged in as are reasonable from proven facts, whether those facts be circumstances adduced or proven by actual eyewitnesses.

There is a *hiatus* in this proof that leaves unsettled in a normal, reasonable mind the main fact to be ascertained in this case; that is, how Elliott came to his death at the moment. The fact that the car on which he might have been riding protruded six inches beyond the protruding rotten shell of a crosstie is a potent circumstance, as well as the fact that there was no identification here established or attempted by the plaintiff as to the toe print seen by one witness being that of the decedent. The proof shows that this witness was informed by others as to Elliott's death. The engineer testified for plaintiff that others had directed him to the scene, or had first ascertained before he visited the scene that Elliott had been killed. It cannot be said that, because Elliott's body apparently came in contact with the moving wheels of the cars on the track at or near the point where this defective crosstie was protruding upward, the mind can be al-

lowed to combine the two circumstances, and thereupon hold the defendant guilty of negligence.

It must be borne in mind that this cause by agreement of parties is tried under the federal law, and not under the state statute.   Circumstances linked together must prove a fact, and there must be enough circumstances to point out to the inquiring mind the fact to be ascertained. The facts and circumstances of this case do not reasonably point out how this death occurred.   This record leaves this question to the imagination and to speculation, which is not a safe basis for the imposition of damages in a case where the negligence of defendant must be proven.

We think the facts of this case are analogous to the facts detailed by the supreme court of the United States in *Chicago, Milwaukee & St. Paul R. R. Co.* v. *Edith F. Coogan, etc.,* 271 U. S. 472, 46 S. Ct. 564, 70 L. Ed. 1041. In our opinion, the Coogan case is stronger in its facts for the plaintiff than is the instant case.   Without quoting the facts in that case we refer to the rule as stated by Mr. Justice BUTLER as the organ of that court, as follows:

"It follows that, unless the evidence is sufficient to warrant a finding that the death resulted from the catching of deceased's left foot under the bent part of the pipe line, the judgment cannot be sustained.   As there is no direct evidence, it is necessary to determine whether the circumstances are sufficient to warrant a finding of that fact.   Whenever circumstantial evidence is relied on to prove a fact, the *circumstances must be proved, and not themselves presumed.*   [Italics ours.]   *United States* v. *Ross,* 92 U. S. 281, 284, 23 L. Ed. 707, 708; *Manning* v. *John Hancock Mut. L. Ins. Co.,* 100 U. S. 693, 698, 25 L. Ed. 761, 763."

In the instant case the proof must lead to the fair conclusion that the toe print underneath the rotten crosstie was made by the plaintiff's intestate in this case, and that, from the circumstance of the toe print being under

the rotten crosstie the crosstie caused the plaintiff's in-
testate to stumble, and was the proximate cause of El-
liott's death, or there is no case here made out against
the defendant. These two potent facts are not shown by
all or any of the circumstances in this case, nor can it
be fairly adduced that the toe print was that of Elliott,
or that his foot was caught at that particular place, and
that, because his foot was caught beneath the rotten cross-
tie, he was caused to stumble and fall beneath the mov-
ing train. He may have swung between the moving cars
and his hold slipped. He may have disembarked, and
undertaken in the nighttime to catch the rung of the lad-
der on the side of the moving box car, and missed his
hold. It may have been his toe print, or it may have been
some other man's. It may have been made before his
death, or it may have been made after his death. This
chasm cannot be bridged by the imagination.

Speaking further for the court, Mr. Justice BUTLER
said:

"It is the duty of the trial judge to direct a verdict
for one of the parties when the testimony and all the in
ferences which the jury reasonably may draw there-
from would be insufficient to support a different finding.
*Baltimore & O. R. Co.* v. *Groeger,* 266 U. S. 521, 524, 45
S. Ct. Rep. 169, 69 L. Ed. 419, 422. When the evidence
and the conclusions which a jury might fairly draw from
the evidence are taken most strongly against the petition-
er, the contention of respondent that the bent pipe caused
or contributed to cause the death is without any substan-
tial support. The record leaves the matter in the realm
of speculation and conjecture. That is not enough.
*Pawling* v. *United States,* 4 Cranch, 219, 221, 2 L. Ed. 601,
602; *Patton* v. *Texas & P. R. Co.,* 179 U. S. 658, 663, 21
S. Ct. Rep. 275, 45 L. Ed. 361, 364; *Looney* v. *Metropoli-
tan R. Co.,* 200 U. S. 480, 488, 26 S. Ct. Rep. 303, 50 L.
Ed. 564, 569, 19 Am. Neg. Rep. 627; *St. Louis, I. M. & S.
R. Co.* v. *McWhirter,* supra, 229 U. S., 282, 33 Sup. Ct.
Rep. 858, 57 L. Ed., 1187; *St. Louis-San Francisco R. Co.*

v. *Mills,* 271 U. S. 344, 46 So. Ct. Rep. 520, 70 L. Ed. 979, decided May 24, 1926.''

*Affirmed.*