Merrimack,
March 1, 1927

ARTHUR J. WATKINS *v.* BOSTON & MAINE RAILROAD.

*Robert W. Upton* and *Joseph C. Donovan* (*Mr. Upton* orally), for the plaintiff.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendant.

MARBLE, J. Section 2 of the boiler inspection act as amended by 38 U. S. Stat. 1192, *c.* 169, *s.* 1, required the defendant to furnish a locomotive and tender "in proper condition and safe to operate." The plaintiff contends that the locomotive in question was not in proper condition because of excessive lateral play in the apron connecting the cab and tender, and because of the absence of chains across the open gangways, through which the enginemen entered and left the engine.

The construction of the apron is described at length in the first opinion. 79 N. H. 285, 286. Recovery was there denied because the plaintiff failed to connect the condition of the apron with his injury. It was conceded that the movement of the apron would be insufficient to render it unsafe when the locomotive was running "on a smooth straight track," and the court declared there was nothing in the testimony from which it could be found that the track at the place of the accident was uneven or that the accident happened on a curve. At the first trial the plaintiff asserted that he was thrown from the engine, but did not recall any prior shock or jolt. His head was severely injured. He now claims that this injury affected his memory for a time, but that after four years his recollection of what happened became clear. His present testimony is to the effect that "the apron lurched to the right with a snap," and "seemed to lift and throw" him.

The jury were instructed that they might find that he was thrown by the loose apron either (1) from his own testimony, or (2) from the testimony relating to the effect of a curve on the apron if they believed from the evidence that the engine was on a curve at the time.

There was abundant proof of excessive play in the apron and increased hazard to the plaintiff by reason thereof. The plaintiff's testimony, if true, fully justified a finding that the accident would not have occurred if the apron had been properly tightened.

But the defendant argues that this testimony is wholly unreliable, and that the curve on which the accident is alleged to have happened was too slight to be other than negligible.

There was testimony that the lateral play "in a normal apron" should not be more than an eighth of an inch; that the apron on which the plaintiff was standing at the time of his injury had a play of an inch and three-quarters, and that this condition had existed for at least a year; that grooves coextensive with this superfluous play had been worn in the angle iron on which the apron rested; that one of the hinges by which the apron was attached to the cab had been a "repair job" and that one of the checknuts had been missing for a long time; that unevenness in the track, whether on a curve or not, might cause an abrupt lateral as well as upward motion of the apron, and that the greater the play in the apron the greater this motion would be.

The accident occurred in December. There was evidence that low joints in the track are frequent in the spring and fall because of the frost, and that they are difficult to detect. If due care in the inspection of the track at this season of the year was not likely to reveal such depressions, then the defendant's duty to keep its locomotive and tender in a reasonably proper condition to minimize the effects of an uneven track was all the more imperative. Its conduct was to be judged in the light of possible danger. *Tullgren* v. *Company*, 82 N. H. 268, 276; *Hussey* v. *Railroad*, 82 N. H. 236, 245.

From the fact that low joints are sometimes sufficiently pronounced to upset a person who is not standing on the apron, it is argued that even if a low joint were a factor in the present case, it would be pure speculation to conclude that the looseness of the apron was also a factor. This argument ignores the fact that the jar accompanying the accident was not severe enough to attract the attention of either the engineer or the pilot. This fact in connection with the plaintiff's testimony made the conclusion inferential rather than conjectural. *Castonia* v. *Railroad*, 78 N. H. 348, 350; *Saad* v. *Papageorge*, 82 N. H. 294, 295.

The plaintiff testified unequivocally that his exit from the engine was due to an unusual lurch of the apron. He fell from the right-hand side of the engine, and because he states that the lurch of the apron

was also to the right, it is urged that his account of the accident is "opposed to fundamental and elementary laws of nature" and cannot, therefore, be true.

In answer to this contention it may be said in the first place that the rolling and swaying of the cab and tender, the play in the flanges and journals, and the vertical as well as the lateral motion of the apron were too uncertain to admit of a scientific demonstration that a movement of the apron to the right under such conditions could not have impelled the plaintiff in that direction. 21 A. L. R. 141, 153.

In the second place, the jury were not obliged to accept or reject the plaintiff's testimony in its entirety. It related to objective matters about which he might be mistaken, and was not of the class which bound him irrespective of its truth. *Harlow* v. *Leclair*, 82 N. H. 506. How much or how little of the testimony was entitled to credence was a matter for the jury to decide. They could believe the plaintiff's general assertion that a sudden and unwonted lurch of the apron caused the accident without also believing that his narrative was correct in all its details.

That his present testimony supplies the deficiency pointed out in the first opinion was urged in disparagement of his truthfulness at the trial. It is needless to say that the finding of the jury on that question is not reviewable here.

Since there was direct evidence that the plaintiff was thrown by the apron, circumstantial evidence of that fact was not indispensable. Consequently, the plaintiff does not fail because of the absence of evidence of any specific defect in the track. Nor is it necessary to consider the evidence relating to the curve. The verdict was fully justified without reference to this evidence, and the defendant did not move to withdraw the issue from the jury. *Williams* v. *Railroad*, 82 N. H. 253, 255; *Rockwell* v. *Hustis*, 79 N. H. 57, 58.

It is doubtful if the defendant could be deemed negligent for failing to guard the gangways if there were no evidence of excessive play in the apron. *Zajac* v. *Company*, 81 N. H. 257, 260. It does not appear that engines were generally equipped with chains (*King* v. *Gardiner*, 76 N. H. 442; *Warburton* v. *Company*, 75 N. H. 592; *Saucier* v. *Spinning Mills*, 72 N. H. 292, 295), but the defendant had maintained them at one time on other engines and therefore knew of their use. *Speares Sons Co.* v. *Railroad*, 80 N. H. 243, 244; *Rockwell* v. *Hustis*, 79 N. H. 57, 59. The safe operation of an engine with an insecure apron might well demand special protection, and the jury, under the circumstances, would be warranted in finding

that chains were essential for that purpose. *Burke* v. *Railroad*, 82 N. H. 350, 359; *Derosier* v. *Company*, 81 N. H. 451, 466; *Reynolds* v. *Company*, 81 N. H. 421, 423; *Collins* v. *Hustis*, 79 N. H. 446, 449; *Boody* v. *Company*, 77 N. H. 208, 214; *Peerless Mfg. Co.* v. *Railroad*, 73 N. H. 328; *Wheeler* v. *Railway*, 70 N. H. 607; *Warren* v. *Railway*, 70 N. H. 352, 363. The general exception to the submission of the question of the duty to provide chains is accordingly over-ruled.

But the defendant also excepted to the submission of the question under the boiler inspection act. This statute as originally enacted required the boiler and appurtenances to be "in proper condition and safe to operate in the service to which the same is put, that the same may be employed . . . in moving traffic without unnecessary peril to life or limb." 36 U. S. Stat. 913, *c.* 103, *s.* 2. By the amendment of 1915 the provisions of the act were extended to include "the entire locomotive and tender and all parts and appurtenances thereof." 38 U. S. Stat. 1192, *c.* 169, *s.* 1. The act is to be applied in connection with the federal employers' liability act. Under the latter, the employer is liable for any negligence on his part which causes injury to an employee, and the employee will not be held guilty of contributory negligence or to have assumed the risk if a violation of section 2 of the boiler inspection act contributed to cause his injury. *Baltimore & Ohio R. R. Co.* v. *Groeger*, 266 U. S. 521, 528.

In the *Groeger* case the plaintiff's intestate was killed by the explosion of a boiler. One of the acts of negligence claimed was the failure to have a fusible plug in the crown sheet. The jury were instructed that the defendant was obliged to avail itself of the best mechanical contrivances in known practical use, and if that standard of duty required a fusible safety plug to be installed, then the absence of such a plug would impose upon the defendant an absolute liability. The court held that this instruction was erroneous, but said (*p.* 531) that the presence or absence of a fusible plug was a matter properly to be taken into consideration with other facts in determining the ultimate question whether the boiler was in the condition required by the act.

In the present case the court did not ask the jury to decide whether an engine in order to conform to the statutory requirements must be equipped with chains, but merely to determine whether the absence of chains on the locomotive in question rendered that particular locomotive dangerous and unsafe. The instruction was unobjectionable.

During his cross-examination the plaintiff stated that he had read the opinion of the court on the first transfer of the case. A few questions were asked him regarding his understanding of the opinion, but the opinion itself was neither offered nor received in evidence. Defendant's counsel claimed the right to read the opinion to the jury in the course of his argument. To the refusal of the court to permit him to do so, the defendant excepted. The purpose of reading the opinion was not to state the law applicable to the case (*Charrier* v. *Railroad*, 75 N. H. 59, 63), but to attack the credibility of the plaintiff. Counsel was permitted to refer to those portions of the opinion which had been called to the plaintiff's attention in cross-examination, but the opinion was not a documentary exhibit and could not properly be treated as such. *Olney* v. *Railroad*, 73 N. H. 85.

The defendant moved to strike out certain evidence relating to the former verdict. The court denied this motion when made, but later granted it in effect by directing the jury to disregard the evidence in question. No reason has been suggested why the defendant's exception to the denial of the motion should not be overruled. The questions raised by the other exceptions have been disposed of by the main discussion of the case.

*Judgment for the plaintiff.*

Snow and Branch, JJ., did not sit: the others concurred.

On Rehearing. After the foregoing opinion was filed, the defendant moved for a rehearing upon its exceptions to the submission to the jury of the issue of fault in not guarding the gangways of the locomotive. Argument upon the motion was invited.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Demond* orally), for the motion.

*Robert W. Upton* and *Joseph C. Donovan* (*Mr. Upton* orally), opposed.

Peaslee, C. J. The suit is under the federal boiler inspection act, as amended, and involves the interpretation and application of those statutes. Upon the questions thus presented the federal view must prevail. *Crugley* v. *Railway*, 79 N. H. 276, 277, and cases cited.

It appeared in evidence that chains to guard the gangways of locomotives are not approved by the operators of railroads. Such devices were used at one time upon two or three. models of locomotives, but never on the type involved in this accident. This feature of the plaintiff's claim (lack of chains) is governed by the decision in *Baltimore & Ohio Railroad* v. *Groeger*, 266 U. S. 521.

In that case there was proof of a boiler explosion, and three grounds of complaint were presented. The faults charged were: lack of a fusible plug in the crown-sheet, broken stay-bolts, and a leak in or near the crown-sheet. The issue as to broken stay-bolts was disposed of upon proof that the defect had no part in causing the explosion. The evidence of the leak was held to make a case for the jury. As to the lack of a fusible plug, the evidence showed that while there is some difference of opinion among railway experts as to the desirability of the device, yet many, if not most, railroads did not use such appliances. It was held that, upon such proof, the lack could not be made ground of complaint. The decision of those in authority that fusible plugs should not be used is not to be reviewed by a jury. Such a question is not "to be left to the varying and uncertain opinions and verdicts of juries." *Ib.*, 531.

In applying the above conclusions to the particular exception there presented, it was held that the trial court "erred in authorizing the jury to decide that 'the standard of duty imposed by the law required a fusible safety plug to be installed,' and that 'the absence of the fusible safety plug would impose upon the defendant here an absolute liability.'" *Ib.*

Thus far it seems plain that the decision is applicable to the present situation, and calls for a ruling in the defendant's favor upon the issue as to chains. But it is urged that other parts of the opinion point out a ground upon which such a lack of protection upon a particular engine may be taken advantage of, and made ground for a recovery under the statute.

"The presence or absence of a fusible plug was a matter properly to be taken into consideration in connection with other facts bearing upon the kind and condition of the boiler in determining the essential and ultimate question, i. e. whether the boiler was in the condition required by the act." *Ib.*

As we understand this quotation, it does not mean that the lack of the plug could be treated as a violation of the statutory duty; but rather that it is one of the surrounding conditions in the light of which the character of other deficiencies is to be judged. The leak

there shown to have existed might have created danger to life or limb if there was no fusible plug in the crown-sheet, while it might have been comparatively harmless if there had been a safety outlet. The ground of complaint was the leak, and if that did not constitute a fault, the servant could not set up an alternative or additional claim that the absence of the safety-plug was a violation of the act. As to whether the leak was an actionable fault, the circumstances under which it existed were material. If it was not such a fault, recovery could not be had upon the ground that lack of a fusible plug was a fault and actionable in this particular instance because of the fact that there was a leak.

The presence or absence of a fusible plug was to be taken into account by the jury. But they were not permitted to treat the absence of the plug as an actionable fault. The language of the opinion and the specific rulings made seem to us to admit no other conclusion.

So in this case, while the physical fact of the absence of chains was to be considered, the feasibility or desirability of using them was not in issue. Evidence upon that topic was immaterial to the issue the jury could be permitted to pass upon. The question why chains were lacking was not on trial.

But it is said that, granting that juries cannot be permitted to find that safety-plugs, or chains, should be used as general equipment, still, if a case presenting special hazards is shown, the matter of such equipment to meet the special situation may be passed upon and made ground for liability. Of course the evidence as to railway usage is significant only so far as similarity of conditions appears. The difficulty with the argument is that there was no evidence of any unusual condition, calling for unusual equipment. There was merely evidence of a lack of repair in the apron. With the apron in repair, there would be nothing upon which to base a claim that unusual equipment could be required. It is the case of a work-place which is, in law, perfect in every respect save one. It seems to be a perversion of reason to say that although the defect was not such as to create liability, under all the circumstances shown, yet it might be reinforced by a claim that the otherwise reasonably safe surroundings should have been made safer.

Testimony adduced by the defendant was to the effect that an apron with as much play as this one was alleged to have was not dangerous, but was proper construction. From this it is argued that here was an unusual construction, calling for unusual precautions.

Therefore the lack of chains could be found to be a fault, although it could not be as to a locomotive with an ordinarily secure apron. This argument rests upon the proposition which is common to several others advanced. It depends upon a claim that an apron with so much play was dangerous. If the apron was not dangerous, its condition affords no basis for a claim that other protection should have been provided because of it. If it was dangerous, its condition could be found to have been improper. The testimony that it was proper was based upon the proposition that it was not dangerous. The defendant made no claim that a dangerous apron was proper. There is no evidence in the case upon which such a finding could be based.

Varying the proposition slightly, it is said: Suppose that the jury took the view that the unusual character of the apron made it somewhat dangerous, but not enough so to constitute an actionable fault, they might then go further and find that such equipment was so far out of the ordinary that the usual rule as to running without chains would not reasonably be applicable, and then conclude that the lack of chains on this particular engine was actionable.

As before suggested, there was no evidence that this engine was equipped with a loose apron. The whole evidence went to the point that the play had been increased by wear and use. The reasonable and ordinary remedy for the situation would be to tighten the apron hinges. Whatever there was in the condition of the apron to differentiate it from those in general use consisted in lack of repair. There was no evidence of defective construction.

If the distinction above suggested could be applied when equipments varied from the standard, it does not appear to be applicable where the variation arises solely from a failure to make minor repairs. In a case where the repair would be unreasonably expensive, while the cost of added equipment would be slight, there might be ground for such a claim. But where, as in this case, the repair would be a slight matter, and the added safeguard a more expensive undertaking, involving undesirable features which are deemed to be outside the sphere of jury consideration, it is manifest that the subject of requiring added equipment because of unusual conditions cannot be left to the jury. In considering whether chains ought to have been provided on the engine, the whole issue of why chains are or are not desirable is inevitably opened. The general rule being that such an issue is not for the jury, an exception thereto is not to be allowed unless there is substantial reason for it. There is no such reason here. Permitting the jury to consider the open gangways

upon the issue of duty to have the apron in repair would give the plaintiff the benefit of the only reasonable claim of fault which the evidence presents.

No reasonable person could find that reasonable conduct on the part of the defendant would call for the installation of chains when it would not require the tightening of the apron hinges. The latter process would make the engine conform to standard by restoring its original condition. The former would involve additional equipment of a character deemed generally undesirable by those authorized by the federal rule to decide such questions. No practical mechanic would adopt the alternative suggested. It is true that the danger could have been avoided in that way. But that is not enough. Occasion for the action must be shown. If there was not sufficient danger to call for turning up a few nuts on the apron hinge bolts, there certainly was not a situation calling for the installation of chains.

It is also claimed that the decision in *Baltimore & Ohio Railroad* v. *Groeger*, 266 U. S. 521, is not to be treated as an authority prohibiting the submission to the jury of the issue as to a general duty to use chains. This argument is based upon the case of *Great Northern Ry Co.* v. *Donaldson*, 246 U. S. 121, 124, which is cited in the *Groeger* case to another point. In the *Donaldson* case several grounds of complaint were submitted to the jury. Among them was the lack of a fusible plug. The report does not show what the evidence was as to the custom of railroads in this respect, and the opinion contains no reference to this subject. It is not an authority against the views announced in the *Groeger* case. The point in the later case which is involved in the present litigation was not passed upon in the earlier one, and presumably it was not presented by the evidence.

Another question in the *Donaldson* case related to the size of the button heads on the crown bolts, and the propriety of the use made was submitted to the jury. But an examination of the evidence upon that subject shows that there was no proof of a general railroad practice to do what the employer did. It appeared that the use of the large button heads on coal burners was accepted practice, but that on oil burners it was not. As the engine in question was an oil burner, a case was made for the jury.

*Chicago & Northwestern Railway Co.* v. *Bower*, 241 U. S. 470, is also relied upon. The case contains nothing in conflict with the views expressed herein. The fault complained of was the use of an antiquated and dangerous sight feed glass. A later and safer kind had been installed on many of the railroad's locomotives. No suffi-

cient reason was shown for not having installed one on this loco-motive. The holding was that "In this state of the evidence it could not be said, as matter of law, that the defendant was free from negligence in delaying so long to instal a Bull's Eye lubricator upon the engine in question." *Ib.*, 474.

Argument for the submission of the issue as to chains is sought to be drawn from a statement in the *Groeger* case which is con-strued as carrying the implication that the interstate commerce commission might require the use of safety plugs. It was there said: "There is nothing in . . . any rule, regulation, or order . . . which specifies the use of fusible plugs." Assuming that this means that the commission could make such order, the next proposition ad-vanced is that congress could not confer legislative authority upon the commission, that power could not be granted to make anything a duty which could not have been found to be one under existing law. Hence, it is said, if the commission could by rule prescribe the use of safety plugs it must be that in the absence of the rule the duty to use them could be found as a fact. Therefore, the issue of fault in not using them is for the jury.

It is not necessary to attempt to solve the problem thus presented. Whether the answer is that the commission may by uniform rule deal with engineering and other equipment problems, which are not "to be left to the varying and uncertain opinions and verdicts of juries" (*Ib.*, 531), whether the suggestion that there was no rule was merely in answer to argument that in the absence of a rule there was no duty, or whether the matter is hereafter disposed of in some other way, we cannot assume that this reference to the matter of rules was intended to negative the specific statements and the direct decision that the question of duty to use the safety plugs was not for the jury.

The recent case of *Napier* v. *Atlantic Coast Line R. R. Co.*, 272 U. S. 605, is urged as authority limiting the scope of the decision in the *Groeger* case. The question in the *Napier* case was whether congress had conferred upon the interstate commerce commission the power to prescribe locomotive equipment. It was held that such power had been given. "Thus the Commission sets the standard. By setting the standard it imposes requirements." *Ib.*, 612. The case contains no discussion of what limitations there may be upon the authority thus conferred. Although the *Groeger* case is cited, there is no suggestion that the decision was wrong. Assuming that the *Napier* case means that the commission has

power to prescribe equipment contrary to uniform railroad practice and the adverse judgment of all railway experts, it does not hold that a jury can be permitted to pass upon a like question. The *Groeger* case still stands as authority against submitting such a proposition to that tribunal.

The contention that the evidence warranted a finding that chains ought to have been used even if the engine was in normal condition is directly answered by the *Groeger* case. "If the question whether the standard of duty fixed by the act required defendant to have a fusible plug in the crown sheet of the boiler were one for the determination of a jury, we think there was evidence which would sustain a verdict in the affirmative or in the negative. But we think the question was not for the jury." *Ib.*, 530.

The argument that the act should have a liberal construction is of no moment here, except as an aid in solving questions which are not clearly answered by the federal decisions. With the policy or impolicy of the federal conclusions we have no concern.

It is not true that the federal interpretation of this act lessens the scope of liability imposed at common law. On the contrary, the decision in the *Groeger* case is based upon the federal view of the common-law doctrine of what may be found to be negligence. The rule that the sufficiency of standard equipment cannot be submitted to the judgment of a jury is not peculiar to suits under the boiler inspection act. As suggested in another part of the plaintiff's argument, the decisions under the act follow earlier federal cases declaring such a limitation upon common-law actions for negligence.

The plaintiff's difficulty is with the general federal rule as to what may be submitted to a jury as evidence of a faulty condition. The cases under the boiler inspection act do not set up any new limitation upon liability for fault.

It is true as the plaintiff contends that the "essential and ultimate question i. e. whether the boiler was in the condition required by the act" is one of fact. *Baltimore & Ohio Railroad* v. *Groeger*, 266 U. S. 521, 531. The claim that it is therefore one for the jury to decide is subject to the qualification that the evidence must show a defect which could be found to render the engine unsafe within the meaning of the act. The sufficiency of the evidence for that purpose is a federal question, to be determined by the federal view of the proof, and not by the local rule in a state court where the case is tried to the jury.

This principle has recently been reaffirmed in a suit under the

federal employers' liability act. "The rights and obligations of the petitioner depend upon that Act and applicable principles of common law as interpreted by the federal courts. The employer is liable for injury or death resulting in whole or in part from the negligence specified in the Act; and proof of such negligence is essential to recovery. The kind or amount of evidence required to establish it is not subject to the control of the several States. This court will examine the record, and if it is found that as a matter of law, the evidence is not sufficient to sustain a finding that the carrier's negligence was a cause of the death, judgment against the carrier will be reversed. *St. Louis &c. Ry* v. *McWhirter*, 229 U. S. 265, 277; *New Orleans &c. R. R. Co.* v. *Harris*, 247 U. S. 367, 371; *New Orleans &c. R. R. Co.* v. *Scarlet*, 249 U. S. 528." *Chicago &c. Ry Co.* v. *Coogan*, 271 U. S. 472, 474.

In so far as the federal court has passed upon the sufficiency of certain evidence, or the availability of specific facts, or classes of facts, to make out a case, it is the duty of the state courts to apply such conclusions in cases arising under this statute. And as we understand the federal court to hold that criticism of standard railway equipment cannot be the foundation for a recovery here, and as that is what the plaintiff's claim as to lack of chains amounts to, it follows that his position cannot be sustained.

The plaintiff's contention, that the exceptions taken to the charge do not present the question which has been argued, is based upon the claim that "there was an issue for the jury arising out of open gangways and the absence of chains." But our understanding of the federal rule is that there was no such issue. The issue was as to the defective apron. The admitted fact of open gangways was a circumstance to be considered in judging of the adequacy of the apron. That is as far as the jury should have been permitted to go in the consideration of this circumstance. In view of this conclusion, it is manifest that the exceptions taken sufficiently presented to the presiding justice the matters considered here.

It is argued that in the *Groeger* case, "it was held proper to inform the jury of the existence and use of fusible plugs to render boilers safe." It is very doubtful whether that opinion is to be construed as having such meaning. The presence or absence of the plug could be shown, but only for the purpose of proving the extent of the danger of an explosion arising from the leak. It was held as distinctly as well could be that the jury were not to pass judgment upon the railroad for not having the plug.

The absence of a plug, or, more directly, the presence of a solid crown sheet, was evidence tending to show that the leak was dangerous. So here, the fault in maintaining a loose apron was to be judged in the light of the fact that there were open gangways. As in that case it was error to authorize the jury to decide that "the standard of duty imposed by the law required a fusible safety plug to be installed," so in this case it was wrong to submit to them whether the defendant ought not to have supplied chains across the gangways.

The lack of chains was put to the jury as an independent wrong, because of which they might find the defendant in fault. As this is contrary to the view which we take of the federal rule, it follows that the exceptions to the charge must be sustained.

*New trial.*

Snow and Branch, JJ., did not sit: the others concurred.