## CHICAGO AND NORTHWESTERN RAILWAY COMPANY *v.* BOWER.

### ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 301. Argued March 16, 17, 1916.—Decided June 5, 1916.

While the employer is under a duty to exercise ordinary care to supply machinery and appliances reasonably safe and suitable for the use of the employee, he is not required to furnish the latest, best, and safest, or to discard standard appliances upon the discovery of later improvements, provided those in use are reasonably safe and suitable.

Subject to this rule, the question whether the appliance which caused the injury in this case, and which was not of the latest type, was reasonably safe and suitable, was properly submitted to the jury.

Assumption by a locomotive engineer of the ordinary risk of using a lubricator glass when subjected to a normal bursting strain, does not import assumption of an increased and latent danger attributable to the employer's negligence in maintaining the appliance upon an engine carrying an undue pressure.

96 Nebraska, 419, affirmed.

THE facts, which involve the validity of a judgment for damages for personal injuries in an action under the Employers' Liability Act, are stated in the opinion.

*Mr. A. A. McLaughlin* with whom *Mr. William G. Wheeler,* and *Mr. Wymer Dressler* were on the brief, for plaintiff in error.

*Mr. Michael F. Harrington* for the defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

We have here under review a judgment of the Supreme Court of Nebraska affirming a judgment in favor of de-

fendant in error in an action based upon the Federal Employers' Liability Act of April 22, 1908 (c. 149, 35 Stat. 65), for the loss of an eye caused by the breaking of a lubricator glass on a locomotive engine upon which he was at work as engineer in the employ of plaintiff in error. 96 Nebraska, 419.

No question is made but that the cause of action arose in interstate commerce so as to bring the case within the Federal act. The facts upon which the question of liability depends are these: The plaintiff in the action (defendant in error) was an experienced locomotive engineer. At the time of his injury, which occurred at night in the month of November, 1910, he had just oiled his engine, taken it from the round-house, and placed it upon the outgoing track in readiness for his run. The engine was equipped with a Nathan lubricator, an appliance containing oil for the steam cylinders and the air pump, the oil being conducted to and within the parts where needed under steam pressure from the boiler. In order to give the engineer a view of the interior of the apparatus, and thus enable him to see that the oil was dropping, three cylindrical glass tubes were attached, one carrying the oil for each steam cylinder and one for the air pump. Each of these glasses was surrounded with a shield of perforated metal in two parts hinged together and lightly clamped upon the glass tube by means of a spring to hold it in place. When the lubricator was in operation, the tubes were required to sustain the same steam pressure as the boiler. These tubular glasses would sometimes break. This was most liable to occur: (1) when a glass was newly installed and before it had been properly tempered; (2) when it was subjected to a sudden change of temperature, as when steam was admitted to it while cold; and (3) they would after six or seven weeks' use sometimes "wear thin" and break for this reason. The metal shield was designed in part at least to prevent injury to the

engineer from flying pieces in case the glass should break. This type of lubricator had been in use for over twenty years and had been used upon all defendant's engines down to a time between three and four years prior to the accident. Then a new type known as the Bull's Eye came into use and was recognized as a better appliance because, being unbreakable, it was safer for the engineer, and at the same time obviated the loss of time and delay of trains attributable to breakage of lubricators of the Nathan type; and defendant began to instal Bull's Eye lubricators in place of the older type upon engines already in use and to place them upon all new engines. During the earlier period of the use of the Nathan and before the construction of locomotives of classes Q and R, the engines carried only 140 to 150 pounds boiler pressure, while engines of the classes mentioned carried 190 pounds. An experienced witness called by defendant testified that at the time of the trial (about a year after the accident), approximately 25 per cent. of the engines were still using the Nathan lubricator and 75 per cent. were equipped with the Bull's Eye; that the Bull's Eye was and had been for three or four years recognized as "the proper appliance"; that the Nathan was dangerous to the men, and that the change was being made partly because of this and partly because the breaking of the old style lubricator sometimes delayed trains.

Plaintiff testified that during most of the time for the past 20 years he had operated locomotives equipped with Nathan lubricators having tubular glasses, but not all of these were high-pressure engines. The engine on which he was injured was of Class R, and carried a boiler pressure of 190 pounds. He had operated it for about two months prior to the time of his injury. During his experience of 20 years, lubricator glasses had broken with him on three previous occasions, the last being about three weeks before the occurrence in question. At this

time he asked that a Bull's Eye be substituted on his engine. He testified that this was not because he considered the old lubricator dangerous, but because he wanted to save time on the road in the event of a breakdown. He also testified that he knew that when a new glass was put into a Nathan lubricator it was liable to burst if the steam was turned on suddenly, or if steam was turned on quickly in cold weather, and that on the occasion in question, following the correct practice, he first partially opened the throttles, admitting the steam to the tubes to warm them, afterwards fully opening the throttles, and that it was about seven minutes after this was done that the explosion occurred.

The trial court submitted the case to the jury with instructions to the effect that the burden of proof was upon plaintiff to show that defendant had carelessly and negligently maintained the shield and spring and glass in the lubricator in a weak and dangerous condition, that the lubricator glass was not of sufficient strength for use upon the engine in question or any other engine carrying 190 pounds of steam, and that this fact was known to defendant, or that its experience with said glass and lubricator had been such that it ought to have known that the same was insufficient and dangerous; and that if they believed from a preponderance of the evidence that defendant was thus negligent, and that plaintiff was injured as a result of it, they should find for the plaintiff, otherwise for the defendant.

The principal controversy is as to whether the evidence was sufficient to go to the jury upon the question of defendant's negligence in furnishing the locomotive in question with a lubricator having tubular glasses as described.

The rule of law is: That the employer is under a duty to exercise ordinary care to supply machinery and appliances reasonably safe and suitable for the use of the em-

ployee, but is not required to furnish the latest, best, and safest appliances, or to discard standard appliances upon the discovery of later improvements, provided those in use are reasonably safe and suitable. *Washington &c. R. R.* v. *McDade*, 135 U. S. 554, 570; *Patton* v. *Tex. & Pac. Ry.*, 179 U. S. 658, 664. In our opinion, a correct application of this rule required the present case to be submitted to the jury. Properly limiting the inquiry (and, as we have seen, the trial court did so limit it,) there was no question of attributing negligence to an employer for merely failing to promptly instal the latest, best, and safest appliance; it was a question of keeping an older type of appliance in use after its insufficiency had been demonstrated by experience, and perhaps under conditions materially different from those which had obtained when its use began, in the face of notice that it was not reasonably safe and suitable. It was reasonably inferable from the evidence that defendant's experience had shown that a glass tube capable of withstanding the lower pressures of 140 to 150 pounds could not be relied upon to withstand a pressure of 190 pounds, and that the difficulty could not be obviated, as was attempted, by using thicker glass for the tubes, because its very thickness increased the danger of bursting when steam was first admitted; there being evidence from a witness called by defendant that the older type of lubricator was a dangerous instrument to be used upon a high-pressure boiler and that they broke rather frequently; that it was for this reason, in part, that defendant had introduced the Bull's Eye, beginning three or four years before the accident, installing them first upon high-pressure engines of the Q and R classes, and having already placed them upon a majority of defendant's engines of all sizes. In this state of the evidence it could not be said, as matter of law, that defendant was free from negligence in delaying so long to instal a Bull's Eye lubricator upon the engine in question.

The only other question relates to whether plaintiff assumed the risk of performing his duty upon a locomotive equipped with the Nathan lubricator. Instructions were given to the jury upon the subject, but they are open to some criticism which perhaps can be obviated only by holding, as the Supreme Court of Nebraska held, that there was nothing in the evidence that would sustain a finding that plaintiff assumed the risk.

The crucial question is whether he knew or had sufficient notice of the increased danger attributable to the employer's negligence. Plaintiff testified without contradiction that it was his understanding—he had been "always taught to believe"—that the Nathan lubricator would stand the boiler pressure of 190 pounds. Assuming, as the undisputed evidence shows he had a right to assume, that the glass was being subjected to no greater bursting strain than it was designed to withstand, he still knew that, under special circumstances that have been pointed out, there was danger of a glass bursting unless precautions were taken. Any risk of this character, unaffected by his employer's negligence, he undoubtedly assumed, as a risk ordinarily incident to the occupation he pursued. But this throws no light upon his right to recover, because if he was subjected to no greater risk than that just now indicated, the employer was not negligent and there was no ground of recovery. Under the trial court's instructions, the jury must be presumed to have found that the Nathan lubricator glasses had been shown by experience to be incapable of withstanding a pressure of 190 pounds, that defendant knew of this, and nevertheless negligently maintained such glasses upon plaintiff's engine. There was present, therefore, an extraordinary danger, not normally incident to plaintiff's employment; it was in its nature latent, and not obvious; and there is no evidence in the record that plaintiff had received any notice or warning of the increased hazard attributable to his employer's

negligence. In short, while he knew there were certain dangers naturally incident to the use of tubular glasses upon the lubricator, there is nothing to show that he knew or had any ground to believe that his employer had been wanting in the exercise of proper care for his safety, or that because of such want of care the danger to him was greater than it ought to have been. Without this, he could not be held to have assumed the increased risk. *Gila Valley Ry.* v. *Hall,* 232 U. S. 94, 101; *Seaboard Air Line* v. *Horton,* 233 U. S. 492, 504.

*Judgment affirmed.*