**PARIS & G. N. RY. CO. et al. v. STAFFORD.**

No. 1589—5963.

Commission of Appeals of Texas, Section A.

Nov. 9, 1932.

E. T. Miller, of St. Louis, Mo., Edgar Wright, of Paris, and Goree, Odell & Allen, of Fort Worth, for plaintiffs in error.

John F. Sturgeon, of Pampa, Sizer & Gardner, of Monett, Mo., and Sturgeon, Birmingham & Sturgeon, of Paris, for defendant in error.

SHARP, J.

This suit was filed by Pearl Stafford, administratrix of the estate of Cecil Stafford, deceased, against the Paris & Great Northern Railway Company and the St. Louis, San Francisco Railway Company to recover damages for herself and minor children growing out of the death of Cecil Stafford, an employee of the railway companies, on account of the derailment of the train near Paris, Tex., on September 9, 1927. The suit was brought under the Federal Employers' Liability Act (45 USCA §§ 51–59). The case was submitted to the jury upon special issues, and based upon the answers made to the special issues, the trial court entered judgment for the plaintiffs for $20,000. An appeal was made to the Court of Civil Appeals at Texarkana and the judgment of the trial court was affirmed. 36 S.W.(2d) 331.

In substance, plaintiffs alleged: (1) That a short time prior to the injury to Cecil Stafford, three colored boys, while operating a Ford car on the highway and while making the turn or curve to cross over the railroad track near the switch stand, ran into and struck the switch stand with the car, and by reason of the deteriorated condition of cross-tie to which the switch stand was spiked, and by reason of the defective condition of the switch and switch stand, the attachments and fastenings thereof, and by reason of being set upon one tie instead of two, the switch stand was moved and the top part thereof was slightly leaned or shoved over, and its fastenings and attachments loosened. (2) That these facts were known to the defendants, or by the exercise of proper care could have been known in time to have avoided the injury and death of Cecil Stafford; that the defendants failed to exercise ordinary care to maintain the switch, switch stand, and connections and the ties under the main line track in a reasonably safe condition; and that on account of the condition of the tie, switch stand, and its connections, they were insufficient to safely carry the weight of locomotive and train being operated on the main line track.

The defendants, in addition to their general denial and pleas of assumed risk, in substance, pleaded as follows: That if the death

of Cecil Stafford was not caused by an unavoidable accident, then his death was caused solely by the intervention and independent acts of third parties, over whom the defendants had no control, in knocking down, displacing, and attempting to replace the switch stand located on defendants' property, doing so in such manner that the switch points were not placed against the rails, causing the derailment of defendants' train on a spur track located on defendants' property, and the accident resulting in the death of Cecil Stafford; that the acts of the third parties were unknown to defendants, or their employees, and that the accident occurred within a short time prior to the injury of Cecil Stafford by the derailment of defendants' train; that the defendants did not know of same and could not, by the exercise of ordinary care, have learned of same in time to have prevented the injury and death of Cecil Stafford, and that they are not liable therefor.

At the conclusion of the evidence, plaintiffs in error requested the court to instruct the jury peremptorily to return a verdict in their favor. This request was denied.

Plaintiffs in error contend: (1) That the plaintiff in this case failed to prove any actionable negligence against the defendants; (2) that the plaintiff did not prove that any negligent act of the defendants was a proximate cause of the derailment of the train; (3) that the proof conclusively shows that the acts of the negroes in knocking over the switch stand and attempting to reset it was the direct and proximate cause of the derailment of the train; and (4) that the defendants could not reasonably foresee or anticipate that the switch stand would be knocked down and would be replaced so that the target would indicate a clear track, whereas the improper replacement of the stand left an open switch.

The precise question before us for decision is this: Is there any evidence which authorizes a finding that the railway companies, under all the circumstances, ought to have anticipated that, by reason of the construction of the switch stand and its location, some one driving a car upon the highway would leave the highway and strike the switch stand, change its location, and cause the wreck of a train, as was done in this case?

The controlling facts are as follows: Going north from Paris the state highway for some distance parallels the railroad track, and at Trout Spur crosses the railroad track at right angles. Approximately 50 feet north of the highway and at the south end of a switch track there was located a switch stand. About 30 minutes before the derailment three negroes traveling north on the highway in a Ford truck ran off the highway at the curve, over and across a ditch, onto the railroad right of way and up the embankment, where

they struck the switch stand and knocked it over. They attempted to replace the switch stand, and at the time of the derailment the stand was in an upright position, and the target showed clear. The record shows that the stand was placed in an improper position by the negroes, which left the switch points open about two inches, resulting in a condition that caused the derailment. The testimony further shows that on the day before the derailment the switch in question was used by the crew on a freight train in setting a car on the switch; that the switch was then all right and that it operated properly; that this same freight train passed over the track in the early morning of the day of derailment and the track was clear then and in proper order; that the section foreman inspected the switch stand on the day of the wreck and that it was in good shape. The testimony also shows that when the locomotive struck this open or cocked switch the wheels on one side followed the main line rail, and the wheels on the other side followed the east spur rail until the spread between the two rails was too great, when the wheels on one side dropped off and onto the ties. The engine then turned over. Witnesses who had observed the switch about thirty minutes prior to the wreck testified that the stand was in proper position and the points were pressing against the rails. The track was examined immediately after the derailment, and it was found from the marks on the ties that the wheels of the locomotive left the rail about 20 feet north of the switch, from which point on the track was torn up. At the switch stand, and for a distance of about 20 feet, the track was intact. The switch tie was in its proper place and functioning properly. The switch braces were holding and the track was in proper alignment at and near the switch, but the points were about 2 inches from the rails, the same distance the switch stand had been set out of its proper position.

The rule is well settled that foreseeableness or anticipation of injury is an essential element of proximate cause, and this doctrine is well supported by both federal and state decisions. T. & P. Ry. Co. v. Bigham, 90 Tex. 225, 38 S. W. 162, 163; G., C. & S. F. Ry. Co. v. Bennett, 110 Tex. 270, 219 S. W. 197, 198; Trinity & B. V. Ry. Co. v. McDonald (Tex. Com. App.) 208 S. W. 912; San Antonio & A. P. Ry. Co. v. Behne (Tex. Com. App.) 231 S. W. 354; Union Stockyards v. Peeler (Tex. Com. App.) 37 S.W.(2d) 126; St. Louis, S. F. & T. Ry. Co. v. Green (Tex. Com. App.) 37 S. W.(2d) 123; Chicago & N. W. Ry. Co. v. Bower, 241 U. S. 470, 36 S. Ct. 624, 60 L. Ed. 1107; Missouri Pac. Ry. Co. v. Aeby, 275 U. S. 426, 48 S. Ct. 177, 72 L. Ed. 351; Atchison, T. & S. F. Ry. Co. v. Calhoun, 213 U. S. 1, 29 S. Ct. 321, 322, 53 L. Ed. 671; Milwaukee & St. P. Ry. Co. v. Kellogg, 94 U. S. 474, 24 L. Ed. 256;

Cole v. German Savings & Loan Society (C. C. A.) 124 F. 113, 63 L. R. A. 416; Davis v. Schroeder (C. C. A.) 291 F. 47; Engle v. Director General of Railroads, 78 Ind. App. 547, 133 N. E. 138, 140; Cleveland, C., C. & St. L. Ry. Co. v. Clark, 51 Ind. App. 392, 97 N. E. 822. Many other decisions could be cited.

■■ In order for defendants in error to recover in this cause, the rule that established negligence does not give rise to a cause of action under the Federal Employers' Liability Act (a) if there was a direct, independent, and efficient intervening cause, or (b) if the consequences should not reasonably have been foreseen or anticipated, must be overruled. The law does not impose the rule upon the railroad companies that they could foresee or reasonably anticipate, and that they were required to anticipate or to provide for trespasses upon their property by persons in no way connected with the service or employment of the companies. On the contrary, the law imposes the presumption that the negroes involved in this controversy and all other persons would refrain from committing trespasses upon the right of way of the railroads. The railroad companies had the right to indulge in this presumption and to calculate the natural and probable result of its acts and omissions upon this supposition. The companies could not assume anything else, for it would be impossible, impracticable, and inequitable to predicate and administer the rights and remedies of persons upon the theory that those persons entirely disconnected with the companies would either violate the laws or disregard their duties by trespassing upon the rights and property of others. Such a rule finds no place in the administration of justice.

■ But it is contended that the railroad companies permitted the tie or ties upon which the switch stand rested to become decayed and that this negligence caused the injury. If we concede that the tie or ties were decayed and that this was negligence, we are still confronted with the proposition: Would this act be deemed the proximate cause, where an independent and disconnected agency, like the car leaving the highway and striking the switch as it did here, has supervened and brought about the result? If the fact of the intervention of an independent agency, under all the circumstances, ought to have been foreseen, then the negligence in permitting the tie or ties to become decayed would be actionable.

Under both the federal and state authorities above cited, the condition of the ties cannot be justly regarded as the proximate cause of the death of Cecil Stafford. The test of this question is: Ought the railroad companies and its agents to have reasonably foreseen that as the consequence of some one leaving the highway and hitting and misplac-ing the switch stand, which caused the derailment of the train causing the injury of Stafford, or like injury to some other employee in his situation would probably result? No one representing the railroad companies could have regarded it other than a mere guess or conjecture, at best, that some one driving a car on the highway would leave the highway, cross a deep ditch, climb up an embankment, and strike a switch stand 50 feet from the highway and displace it, which would derail a train passing over the spot within thirty minutes thereafter and injure the employees operating the train.

In answer to the foregoing question we quote from some of the authorities that have spoken upon this precise question. In Atchison, T. & S. F. Railway Company v. Calhoun, supra, the Supreme Court of the United States said: "The rules of law are reasonably well settled, however difficult they may be of application to the varied affairs of life. In this case undoubtedly the plaintiff's injury was traceable to the original negligence, in the sense that it would not have occurred if the plaintiff had not been separated from his mother. Nevertheless, that negligence may not be the cause of the injury, in the meaning which the law attributes to the word 'cause' when used in this connection. The law, in its practical administration, in cases of this kind regards only proximate or immediate, and not remote, causes, and, in ascertaining which is proximate and which remote, refuses to indulge in metaphysical niceties. Where, in the sequence of events between the original default and the final mischief an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief, the second cause is ordinarily regarded as the proximate cause and the other as the remote cause."

In the case of Engle v. Director General of Railroads, supra, the following language is used: "* * * On the other hand, if the agency intervening was one over which the original tort-feasor had no control, and which was not put in motion by the original wrongful act; and if the character of the intervening agent, and the manner of the intervention, where such as, under the circumstances, could not reasonably have been expected to occur in the ordinary course of nature and according to common experience—then such independent agency so intervening will be treated as the sole proximate cause, and the original wrongful act will be treated as only a condition."

The Bigham Case, above cited, is one of the outstanding cases in this state. Discussing this very question in that case, Chief Justice Gaines reviewed the many authorities bearing upon this subject and announced the rule which controls in this state. After discussing the different phases of the rule, he

said: "* * * But it seems to us that, as applied to the law of negligence at least, a better ground for the rule is that a party should not be held responsible for the consequences of an act which ought not reasonably to have been foreseen. In other words, it ought not to be deemed negligent to do or to fail to do an act, when it was not anticipated and should not have been anticipated that it would result in injury to any one. To require this is to demand of human nature a degree of care incompatible with the prosecutions of the ordinary avocations of life. It would seem that there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed."

Again quoting the rule announced in Milwaukee & St. P. Ry. Co. v. Kellogg, supra, it was said: " "* * * The question always is, Was there an unbroken connection? Would the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.' "

Chief Justice Gaines also in that opinion summed up the judgment of the court in the following oft-quoted language: "In our opinion, nothing short of prophetic ken could have anticipated the happening of the combination of events which resulted in the injury of the person of the plaintiff." He further said: "* * * And, since it was clearly out of the range of reasonable probability that an injury to the person of any one should result, it should be held, as a matter of law, that the negligence of the company gave no right of action for such injuries."

■ Where suit is based upon the violation of a statute, the action would fail without showing of the proper causal connection between the negligence and the injury. Mr. Justice Greenwood stated the rule in the case of Waterman Lbr. Co. v. Beatty, 110 Tex. 227, 218 S. W. 363, 364, as follows: "There is no doubt that it is essential to the maintenance of an action for damages for a personal injury, founded on the violation of a statute, to establish, not only a violation of the statute, but that the violation was the proximate cause of the injury. Though the violation of the statute would be negligence per se, the action would fail without a showing of proper causal connection beteen the negligence and the injury. Shearman & Redfield, Law of

Negligence (Street's Ed.) § 27; T. & P. Railway Co. v. Bigham, 90 Tex. 225, 38 S. W. 162; Spokane & I. E. R. Co. v. Campbell, 241 U. S. 510, 36 S. Ct. 683, 60 L. Ed. 1125; Stirling v. Bettis Mfg. Co. (Tex. Civ. App.) 159 S. W. 916; Elk Cotton Mills v. Grant, 140 Ga. 727, 48 L. R. A. (N. S.) 656, 79 S. E. 836. It follows that there was the same necessity for a proper application of the thoroughly settled law of proximate cause in this case as in the ordinary negligence case involving no violation of a statute."

■ The rule is generally recognized that whether a certain result could be anticipated from a given act or omission is usually a question of fact and becomes a question of law only when but one reasonable conclusion can be drawn from the facts. In the case of Western & A. R. Co. v. Hughes, 278 U. S. 496, 49 S. Ct. 231, 232, 73 L. Ed. 473, the Supreme Court of the United States announced the rule applicable to cases arising under the Federal Employers' Liability Act in the following language: "* * * That it is the duty of the judge to direct the verdict when the testimony and all inferences which the jury could justifiably draw therefrom would be insufficient to support a verdict for the other party, Elliott v. Chicago, M. & St. P. Ry. Co., 150 U. S. 245, 37 L. Ed. 1068, 14 S. Ct. 85; A. B. Small Co. v. Lamborn & Co., 267 U. S. 248, 254, 69 L. Ed. 597, 600, 45 S. Ct. 300; and that this federal rule must be applied by state courts in cases arising under the Federal Employers' Liability Act, Chicago, M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472, 474, 70 L. Ed. 1041, 1043, 46 S. Ct. 564; Gulf, M. & N. R. Co. v. Wells, 275 U. S. 455, 457, 72 L. Ed. 370, 371, 48 S. Ct. 151; Toledo, St. L. & W. R. Co. v. Allen, 276 U. S. 165, 168, 72 L. Ed. 513, 515, 48 S. Ct. 215."

In the case of Gulf, M. & N. R. Co. v. Wells, 275 U. S. 455, 48 S. Ct. 151, 153, 72 L. Ed. 370, it is said: "In short, we find that on the evidence and all the inferences which the jury might reasonably draw therefrom, taken most strongly against the Railway Company, the contention that the injury was caused by the negligence of the engineer is without any substantial support. In no aspect does the record do more than leave the matter in the realm of speculation and conjecture. That is not enough. Patton v. Texas & P. R. Co., 179 U. S. 658, 663, 45 L. Ed. 361, 364, 21 S. Ct. 275; Chicago, M. & S. P. Ry. Co. v. Coogan, supra [271 U. S.] 478 ([70 L. Ed. 1045], 46 S. Ct. 564)."

■ In principle the case in hand cannot be distinguished from the cases above cited where a recovery was denied. The inescapable conclusion is that the act of the negroes in hitting the switch stand and displacing it was the direct and proximate cause of the derailment of the train, and that the railroad companies will not be held to have foreseen such an unusual happening. The active

cause which produced the derailment of the train and the death of Stafford was wholly independent of the negligence, if any, of the railroad companies and wholly disconnected from it. A judgment in this cause, in the face of this record, can only be based upon theory, conjecture, and speculation as to what caused this wreck or what might have caused it. Judgments are not allowed to rest on such basis.

It further appearing that this case has been tried twice and has been fully developed and no useful purpose can be served by remanding the case for a new trial, we recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and that judgment be entered herein for plaintiffs in error.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for plaintiff in error, as recommended by the Commission of Appeals.