TERRELL, Justice
(dissenting).
Appellant brought this action pursuant to the Federal Safety Appliance Act, Title 45, Chapter 1, United States Code Annotated, to recover damages for personal injuries, caused by the explosion of the boiler in engine Number 815, while-it was being operated in'the discharge of his duty as an *746 employee of appellees. The complaint alleged that the plaintiff (appellant) was scalded, burned and received certain fractures of the spine, pelvis and other injuries. The answer denied all material allegations of the complaint. The jury returned a verdict for the defendant, a new trial was denied, and the plaintiff appealed.
The point for determination is whether or not the trial court committed error in overruling the motion for new trial.
The pertinent part of the Federal Safety Appliance Act, sometimes -called the Boiler Inspection Act, is as follows:
"It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all. parts and appurtenances thereof are in proper condition and safe to operate in' the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb * 45 U.S.C.A. § 23.
Construing this act, the Federal Courts hold that it is the absolute duty of a common carrier to keep its locomotive boilers, including appurtenances, in safe condition, in order that they may be used without peril to employees. Failure of the said equipment, so they say, is an actionable wrong, which does not depend on negligence. The common law imposes ordinary care as against absolute care required by the act under review. Southern Railway Co. v. Lunsford, 297 U.S. 398, 56 S.Ct. 504, 80 L.Ed. 740; Baltimore and Ohio Railroad Co. v. Groeger, 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419; Chicago & Northwestern Railway Co. v. Bower, 241 U.S. 470, 36 S.Ct. 624, 60 L.Ed. 1107; Pennsylvania Railway Co. v. McCarthy, 329 U.S. 812, 67 S.Ct. 635, 91 L.Ed. 693; Brady v. Terminal Railway Association, 303 U.S. 10, 58 S.Ct. 426, 82 L.Ed. 614; Coray v. Southern Pacific Co., 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208.
In Camp v. Atlantic Coast Line Railroad Co., 251 Ala. 184, 36 So.2d 331, the court held that if a locomotive and appurtenances were safe to operate when operation began, but during the operation or by reason thereof, some unsafe condition arose, the continued use of the locomotive may violate the act. The act requires that it be liberally construed to effect its primary purpose, the protection of the employees. Lilly v. Grand Trunk, etc., Railway Co., 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411.
Appellees contend that the sole proximate cause of Laughlin’s injury was his own negligence. They base this contention on the fact that the locomotive was equipped with three gauge cocks and a water glass to indicate the water level in the boiler, that Laughlin was an experienced engineer and had he employed the knowledge available to him by use of the gauge cocks, he would have known that something was wrong with the water level in the boiler. It is further contended that locomotive 815 was thoroughly examined and approved at New Smyra, the day before the explosion; that it was safely operated to Fort Pierce, where it was again examined and found to be in approved condition. It appears that the only defect found in the water system by an examination following the explosion, was a leak in the steam pipe connection with the water glass. The reasonable presumption would seem to be that this might have developed after Laughlin left Fort Pierce and proceeded to a point below West Palm Beach near Lake Worth, where the explosion took place. Laughlin' testified that the engine was in good order when he took charge of it at Fort Pierce.
To offset appellees’ charge of negligence, appellant -contends that the steam leak in the water connection led to a faulty reading of the water glass and failed to give warning of the low condition of the water in the locomotive boiler. Account of this condition, the fireman nor the engineer was aware of or could have been put on notice that the water was not going into the boiler sufficient to keep it covered and prevent the explosion. All this adds up to- the contention that the railroad failed to furnish appellant a locomotive safe to operate as required by the Locomotive Inspection Law. The evidence conclusively showed that there was a leak in the water line before the explosion.
*747 Appellees admit that the law imposes on them the absolute and 'Continuing duty to maintain the locomotive and all its appurtenances in safe condition in order that they operate without peril to the employee. It seems to me that the rationale of the quoted decisions is that if the plaintiff is the sole agent of his injury he cannot recover, but that mere contributory negligence will not bar him from recovery. It is admitted that the locomotive was equipped with three gauge' cocks, which, if functioning properly would indicate the water level in the boiler.
The evidence shows that the defect in the steam pipe leading to the water glass caused a loss of steam and made the water in the glass rise much higher than it would rise normally. This gave an appearance of adequate water in the boiler, when in fact, it was not there. This condition mislead the fireman and the engineer who thought the water pump was functioning properly since the water gauge indicated ample water in the boiler, when as a fact, it was below the danger point. The evidence also shows that the explosion was due solely to the fact that the water went down below the danger point in the boiler. There was evidence which showed that no fault could be laid to the engineer or the fireman for this condition. The statute imposes an absolute duty on the railroad company. Spotts v. Baltimore & O. Railway Co., 7 Cir., 102 F. 2d 160; Baltimore & O. R. Co. v. Spotts, 307 U.S. 641, 59 S.Ct. 1039, 83 L.Ed. 1522.
The net result of the evidence is that the water went below the danger point and caused the boiler to explode. Whether this was due to the leak in the steam pipe or some other cause, is not certain, or whether the cause was obvious or one that was latent an'd could'not be detected, is not certain. It is certain that the boiler exploded and caused the alleged injury, and there is no showing that it was due solely to negligence on the part of the plaintiff. The more reasonable deduction from all the evidence, is, that the locomotive was not safe to operate at the time it was taken1 in charge by appellant, or that it became unsafe while in operation, contrary to the Boiler Inspection Act. Since this is true, the cited cases drive me to the conclusion that appellees were guilty of actionable wrong, and even though there may have been some negligence on the ‘part of the plaintiff, it was not such as to bar recovery under the act. The burden was on defendants to show reason for failure of the equipment.
It is my view that the trial court committed error in refusing the charge-on the doctrine of res ipsa loquitur. This doctrine implies literally that the explosion speaks for itself. A thorough going into the reason's for the explosion would no doubt have clarified the atmosphere and might have led to a better understanding of the causes which brought it about. The doctrine has been many times employed in cases where equipment goes bad. Louisville & N. R. Co. v. Stephens, 298 Ky. 328, 182 S.W.2d 447; Jesionowski v. Boston & Maine Railroad, 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416, 169 A.L.R. 947.
I do not construe the Boiler Inspection Act to make the railroad company an insurer against every kind of accident. It certainly would not be an insurer against ones’ own destruction, but it does make failure- of equipment actionable wrong and that is what we are confronted with. If appellant did in fact misjudge the effect of the steam leak in the water glass, his negligence is not such as would remove the hazard or render him the instrument of it.
We are confronted with a Federal Act that has been repeatedly construed by the Federal Courts. I think their interpretation of the act, when read with the evidence, compels a reversal with directions to grant a new trial on the question of damages based on the injuries proven. I am authorized to say that Mr. Chief Justice SEBRING concurs in this opinion.